**In the Matter of Petition for Naturalization by Kalman J. BERENYI.**

**No. 1500–P–351469.**

United States District Court
D. Massachusetts.

March 29, 1965.

James A. Hamilton, Dist. Director, Michael J. Stegun, Asst. Director, Joseph Sullivan, Gen. Atty., for Immigration and Naturalization Service.

Charles Spar, New York City, Lewis S. Udelson, Boston, Mass., for petitioner.

JULIAN, District Judge.

In accordance with the requirements of 8 U.S.C. § 1447, a final hearing was had before this Court upon the petition for naturalization of Kalman J. Berenyi [1] filed January 30, 1962, under Section 316 (a) of the Immigration and Nationality Act (8 U.S.C. § 1427). A preliminary examination was conducted by a designated naturalization examiner pursuant to the provisions of 8 U.S.C. § 1446. [2]

---

1. This petition was heard together with Petition for Naturalization No. 351468 of Magdalena Berenyi.

2. 8 U.S.C. § 1446 reads as follows:

&ast; &ast; &ast; &ast; &ast;

"(b) The Attorney General shall designate employees of the Service to conduct preliminary examinations upon petitions for naturalization to any naturalization court and to make recommendations thereon to such court. For such purposes any such employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any petitioner for naturalization, to administer oaths, including the oath of the petitioner for naturalization and the oaths of petitioner's witnesses to the petition for naturalization &ast; &ast; &ast;."

In his report of the preliminary examination dated October 12, 1964, and submitted to this Court, the examiner, after summarizing the evidence before him and stating his findings of fact and conclusions of law, recommended that the petition for naturalization be denied on the grounds that the petitioner's membership in the Communist Party of Hungary and his advocacy of the doctrines of Communism have rendered him ineligible for naturalization under 8 U.S.C. § 1424,[3] and that during the period for which the petitioner is required to establish good moral character he testified falsely for the purpose of facilitating his naturalization, thereby obtaining a benefit under the Immigration and Nationality Act, and thus becoming ineligible for naturalization by virtue of the provisions of 8 U.S.C. §§ 1101 and 1427.[4]

3. 8 U.S.C. § 1424 provides in pertinent part as follows:

"(a) * * * no person shall hereafter [after June 27, 1952] be naturalized as a citizen of the United States—

* * * * *

"(2) who is a member of or affiliated with * * * (D) the Communist or other totalitarian party * * * of any foreign state, or of any political or geographical subdivision of any foreign state; * * *

"(3) who, although not within any of the other provisions of this section, advocates the economic, international, and governmental doctrines of world communism * * *;

* * * * *

"(c) The provisions of this section shall be applicable to any aplicant for naturalization who at any time within a period of ten years immediately preceding the filing of the petition for naturalization or after such filing and before taking the final oath of citizenship is, or has been found to be within any of the classes enumerated within this section, notwithstanding that at the time the petition is filed he may not be included within such classes."

4. The pertinent portions of 8 U.S.C. § 1101 provide:

* * * * *

"(f) For the purposes of this chapter—
No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

* * * * *

"(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;"

8 U.S.C. § 1427 provides:

"(a) No person, except as otherwise provided in this subchapter, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his petition has been physically present therein for periods totaling at least half of that time, and who has resided within the State in which the petitioner filed the petition for at least six months, (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship, and (3) during all the period referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

* * * * *

"(e) In determining whether the petitioner has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this section, the court shall not be limited to the petitioner's conduct during the five years preceding the filing of the petition, but may take into consideration as a basis for such determination the petitioner's conduct and acts at any time prior to that period."

The record of the preliminary examination was received in evidence (Exhs. 1A–1H). The petitioner by his counsel expressly consented to its admission.[5]

Pursuant to 8 U.S.C. § 1447(b), the Court, upon demand of the petitioner, required the examination of the petitioner and the witnesses under oath before the Court and in the presence of the Court.

The Court did not consider as evidence the summary of the preliminary examination, the findings of fact, conclusions of law, and recommendation contained in the examiner's report.

## FINDINGS OF FACT

The petitioner filed his petition for naturalization in the office of the clerk of this Court on January 30, 1962.

He is a Hungarian national and was born in Budapest, Hungary, August 7, 1928. He entered the United States on December 4, 1956, having been admitted for permanent residence. He presently resides in Massachusetts with his wife, Magdalena, also a Hungarian national, whom he married in Budapest on June 7, 1952.

Petitioner became a member of the Communist party in Hungary in 1945, the same year that Russian troops occupied that country. By September of 1948 the Communists had gained complete control over Hungary.

Petitioner entered the medical school of the University of Budapest in 1946. He entered the Hungarian Army in 1949, which was then under Communist control. While in the military service he continued his medical studies at the University until his graduation in 1952. He was an outstanding student. Upon graduation he was made a medical officer and served as a physician in the Hungarian Army until 1956, attaining the rank of captain.

The credible evidence establishes that the petitioner remained a member of the Communist party for an indefinite number of years. The evidence, however, is too meager to warrant a finding that the petitioner continued to be a member of the Communist party within the period of ten years immediately preceding January 30, 1962, the date on which he filed his petition for naturalization. He attended closed meetings of the Communist party. He was in charge of instruction in Communist ideology at student study group meetings for an undetermined period of time.

The Hungarian uprising against Russian domination came in November, 1956, but was swiftly crushed by the Russian armed forces. The petitioner did not participate in the revolt. In the resulting confusion he and his wife, as well as others, fled from Hungary into Austria, and were later permitted to come to the United States.

In his "Application to File Petition for Naturalization" (Exh. 1D), subscribed and sworn to by the petitioner on January 30, 1962, before a naturalization examiner, the petitioner answered "No" to this question: "Have you ever, in the United States or in any other place, (a) been a member of, or in any other way connected with, or associated with the Communist Party either directly, or indirectly through another organization, group, or person?" At the time he answered this question in the negative the petitioner knew that the answer was false, and that the true answer should have been "Yes."

On February 2, 1962, in Boston, Massachusetts, the petitioner stated under oath to an officer of the United States Immigration and Naturalization Service authorized by law to administer oaths and take testimony in connection with the enforcement of the Immigration and Nationality laws of the United States,

5. 8 U.S.C. § 1446(b), last sentence, reads: "The record of the preliminary examination authorized by this subsection shall be admissible as evidence in any final hearing conducted by a naturalization court designated in section 1421 of this title." This sentence was added in 1950 by section 28(a) of Public Law 831, Title 1, Internal Security Act of 1950, 64 Stat. 1016.

that he, the petitioner, had never been a member of the Communist party either in the United States or in any other country (Exh. 1D). At the time the petitioner made this statement he knew that it was false and that in fact he had been a member of the Communist party in Hungary.

On May 22, 1962, testifying under oath before an officer of the Immigration and Naturalization Service concerning his petition for naturalization, the petitioner stated that he had never been a member of the Communist party. At the time he so testified the petitioner knew that his testimony was false and that in fact he had been a member of the Communist party.

 In each of these three instances the petitioner gave false testimony for the purpose of facilitating his naturalization and of obtaining the benefits of United States citizenship.

The Court finds that the petitioner is not a person of good moral character within the meaning of the Immigration and Nationality Act.

## CONCLUSIONS OF LAW

No person may be naturalized unless during the period of five years immediately preceding the date of filing his petition for naturalization he has been and still is a person of good moral character. 8 U.S.C. § 1427(a).

A person who during the period for which good moral character is required to be established has given false testimony for the purpose of obtaining any benefit under the Immigration and Nationality Act cannot be regarded as, or found to be, a person of good moral character within the meaning of the Act. 8 U.S.C. § 1101(f) (6).

 The petitioner has the burden of showing that he meets the statutory qualifications for naturalization, and in determining whether he has sustained the burden of establishing good moral character and the other qualifications, the Court is not limited to the petitioner's conduct during the five years preceding the filing of the petition, but may take into consideration as a basis for such determination the petitioner's conduct and acts at any time prior to that period. 8 U.S.C. § 1427(e). Sittler v. United States, 1963, 2 Cir., 316 F.2d 312, 313–314, cert. denied, 376 U.S. 932, 84 S.Ct. 702, 11 L.Ed.2d 652. Therefore, for the purpose of determining whether petitioner gave false testimony concerning his membership in the Communist party the Court may take the fact of such membership into consideration even though he may not have been a member within the five- or ten-year period immediately preceding the filing of the petition.

 On the facts found by the Court the petitioner has failed to establish that during the period of five years immediately preceding the date of the filing of his petition he has been and still is a person of good moral character within the meaning of the Immigration and Nationality Act.

The petition is therefore denied.